BIGBEE *v.* SUMMEROUR *et al.*

1. The object to be accomplished by the appointment of a receiver of real estate is not to determine in limine the question of possession as between adverse claimants, but to preserve the status quo, and, pending the litigation, to take such other precautionary measures as may be necessary to the preservation of the rights of the parties; and whether the court can lawfully embark property seized by it in industrial enterprises depends upon how far such conduct may be fairly necessary to the preservation of the existing status, taking into consideration the character of the property, the uses to which it may be applied, and how far and to what extent use may be necessary to its preservation.

2. Under the facts of the present case, the court did not err in the appointment of a receiver to hold possession of the property in controversy and to preserve the ore which had already been mined, nor in directing that such ore be reduced and the proceeds held to await the final decree of the court; but in so far as the court directed that the receiver proceed on his own account to continue the mining business, from the conduct of which the defendant had been enjoined, it committed error, it not appearing from the pleadings or evidence that such was necessary either to the preservation of the property, to prevent waste, or to prevent deterioration in its value.

Argued April 17, — Decided May 19, 1897.

Injunction and receiver. Before Judge Kimsey. Lumpkin county. January 9, 1897.

*H. H. Perry* and *Boyd & Lilly*, for plaintiff.
*Price & Charters*, for defendants.

ATKINSON, J. The plaintiff in error, alleging that he was the owner of lot of land number 49 in a certain district in Lumpkin county, brought a petition for injunction against the defendants, alleging their insolvency, the purpose of the injunction being to restrain them from the commission of a trespass by mining for gold upon said tract of land. A temporary restraining order was granted. Before the date set for the hearing upon the temporary restraining order, the plaintiff presented an ancillary petition, in which he alleged that, notwithstanding the grant of such temporary restraining order, the defendants, in violation of the same, had continued work upon the lot of land in question; and thereupon he prayed that they be attached as for a contempt. Two of the defendants answered. The two others, who were joined as defendants to the bill, appear to have been minor sons and servants acting under the direction of one of the defendants. Summerour, one of the defendants, in his answer and affidavit accompanying it, alleged that the defendants began work in September, 1896, thinking the shaft on which they were working was on an adjoining lot, number 50, which he himself controlled; that he and one Spriggs, another defendant, both worked on the shaft for two months, thinking that they were on lot number 50. He by his answer admitted that the mine is on lot number 49, the property of the plaintiff. He admitted the insolvency of himself and his sons, and the probable insolvency of Spriggs, his

codefendant. Spriggs likewise answered, alleging in substance the facts stated in the answer of Summerour, except that he denied insolvency. He likewise admitted, by his answer, that the defendants were mistaken as to the line, and that the mine is on the plaintiff's property. He further alleged, however, that in November, after the shaft had been dug to its present depth, the plaintiff agreed that he, Spriggs, might work out the mine from that depth up to the surface, provided he would have the ore beat at the plaintiff's mill, so that he could know how much gold was obtained, and pay him the royalty, should it be determined that the mine was on plaintiff's property. He alleges that after the plaintiff had run the line and ascertained that the mine was really upon his land, he then objected to any more work. Defendant Spriggs likewise alleged that they had taken out $400 worth of ore which was piled up at the mouth of the shaft. He filed his answer in the nature of a cross-bill, praying affirmative relief against the plaintiff, and that a receiver be appointed to have the ore beaten, and to hold the proceeds. He did not allege the insolvency of the plaintiff. Upon the prayer of the cross-bill the judge passed an order appointing a temporary receiver to take charge of the mine and beat out the ore already taken out. Thereafter, upon the hearing of the application for the appointment of a receiver as under the cross-bill, the temporary receiver reported that, between the time of his appointment and the date of such hearing, he had worked up all the ore taken out by the defendant and had the proceeds on hand. Spriggs filed an amendment to his cross-bill, and prayed that the receiver be directed to stope out the mine and take out the ore, as Spriggs claimed he was authorized to do, and hold the proceeds. The plaintiff at the hearing filed an affidavit denying that he had given Spriggs any permission to work on the lot; and presented a number of affidavits from others, showing that he had ordered Spriggs and the other defendants to stop work on the lot before he brought the bill for injunction. The judge granted an order continuing the receiver, directing him to work the mine and stope out the levels already run, beat out the ore and hold the proceeds; and enjoining the plaintiff from working the

shaft or interfering with it until this was done. To the grant of this order the plaintiff excepted; and upon the statements of fact as above recited, we are to inquire whether the court erred in giving the receiver the directions of which complaint is made.

1. When the plaintiff filed his petition to enjoin the defendants from the commission of the waste of which he complained, and the circuit judge sanctioned that petition, there was no occasion for the grant of an injunction against him. The injunction which he had obtained was necessarily mutually operative; and if he, after having obtained the injunction, had undertaken himself to have done the very act which the defendants were enjoined from doing at his suit, he would himself have been guilty of such a violation of the injunction as would have authorized its dissolution. *Johnson* v. *Hall*, 83 *Ga.* 281. High on Injunctions, § 679. There was no dispute as to the title to the premises. The only controversy between the parties was as to the right of the defendant, under the alleged parol license from the plaintiff, to mine the ore. The plaintiff was solvent, so far as the record discloses; and this being true, there is little reason for the appointment of even a temporary receiver, except for the possible purpose of preserving from loss that part of the ore which had been detached from the realty and which was liable to waste and become lost to the parties unless the court took some measure to preserve it, and there was no abuse of discretion in the appointment of a receiver and giving to him authority to take such steps as were necessary to the preservation of that part of the property which was likely to be wasted. We can not give our approval, however, to that part of the order of the court which authorizes the receiver to enter actively into the mining business. The right to work this particular mine was the real subject of the litigation. If the plaintiff had given to the defendant no license to mine in the shaft upon his land, then the right did not exist in him, and the plaintiff was entitled to have his property remain as it was at the time defendants were enjoined; and to deprive him of this substantial right might have resulted in great damage to him. Courts are not at liberty through re-

ceivers to seize the property of solvent persons who have substantial rights which they are seeking to enforce through judicial instrumentality. A receiver should be appointed only in cases of extreme necessity, and then only when his appointment is necessary to the preservation of the thing or right in controversy. Courts may not determine in limine, upon an application for the appointment of a receiver, the question of possession as between adverse claimants, and should move with extreme caution when they are invited by one of the parties to embark property seized by them through their receivers in industrial enterprises, and expose it to the hazard incident to the conduct of such a business. The circumstances of the present case well illustrate the doctrine which we would here inculcate. The court seized this property, directed the receiver to go into the mining business, confessedly one of the most hazardous in which any man can engage. Suppose, as the result of his operations, he had demonstrated that there was little gold in the mine, except such as had already been taken out, and had fallen far short of realizing a sufficient fund to defray the expenses of the business venture, what would have been the position of the plaintiff who in the first instance appealed to the court for his protection? His mine would have been destroyed. He would have been liable to be taxed the costs of the receivership, with the probability of having the expense of this business experiment shared by an insolvent adversary. We do not mean to intimate that cases may not arise in which, in the exercise of a wise discretion, a circuit judge would be authorized to appoint a receiver and direct him to continue the conduct of a business in which the defendant was engaged at the time his property was seized; but we do mean to say that such a course can only be justified when it is absolutely necessary to the preservation of the rights of the parties, it being borne in mind that preservation of the property is the purpose for which a receiver is primarily appointed, and that a judicial administration through him of an estate seized by the court, though the final, is nevertheless a secondary consideration. Necessarily, these matters are largely within the discretion of the trial judge; but at last it becomes a question of law whether

the court can lawfully embark property seized by it in an industrial enterprise, and the exercise of this power depends upon how far such conduct may be fairly necessary to the preservation of the existing status, taking into consideration the character of the property, the uses to which it may be applied, and how far and to what extent use may be necessary to its preservation. So far as we are enabled to do so by judicial utterance, we are disposed to discourage the practice, at the present day too prevalent in the chancery courts, of undertaking to employ the judicial machinery in the conduct of commercial and manufacturing enterprises, the control of which should be more properly committed to private hands.

2. Under the facts of the present case, it does not appear, either from the pleadings or evidence, that it was necessary, either to the preservation of the property or to the maintenance of the rights of the plaintiff or defendants, that the receiver should have been authorized to work out the mine in accordance with the claim of the defendants, thus practically depriving the plaintiff of an opportunity to vindicate his right in accordance with his contention. While, therefore, we do not reverse the judgment appointing the receiver, that judgment is affirmed with the direction that so much of the order as authorizes him to proceed with the mining operations from which both the plaintiff and defendant were enjoined be set aside, and that the costs of this writ of error be taxed against the defendant in error.

*Judgment affirmed, with direction. All the Justices concurring.*