## MITCHELL v. PORTER.

(Circuit Court of Appeals, Ninth Circuit. February 5, 1912.)

No. 1,976.

1. COURTS (§ 405*)—"FINAL ORDER"—REFUSAL TO STRIKE FROM JUDGMENT PROVISION DIRECT ARREST.

An order denying a motion to strike from a judgment a provision directing that execution issue against the person of the defendant after return of execution against his property unsatisfied was a final order within the meaning of Carter's Ann. Code Civ. Proc. Alaska, § 504, which permits a writ of error from the United States Circuit Court of Appeals, Ninth Circuit, to review a final order of a District Court of Alaska.

[Ed. Note.—For other cases, see Courts, Dec. Dig. § 405.*

For other definitions, see Words and Phrases, vol. 3, p. 2802.

Orders, decrees, and judgments reviewable in Circuit Court of Appeals, see notes to Salmon v. Mills, 13 C. C. A. 374; Taylor v. Breeze, 90 C. C. A. 566.]

2. MOTIONS (§ 64*)—ORDER—CONCLUSIVENESS OF ADJUDICATION—INTERLOCUTORY ORDER.

An interlocutory order denying a motion to discharge the defendant in a civil action from custody, made before trial, was not res judicata on a motion to strike from the judgment rendered on an amended complaint a provision directing defendant's arrest.

[Ed. Note.—For other cases, see Motions, Cent. Dig. §§ 88, 90; Dec. Dig. § 64.*]

3. EXECUTION (§ 423*)—AGAINST PERSON—COMPLAINT—ALLEGATION OF FRAUD.

A judgment directing execution against the person of the defendant in a civil action is unauthorized where the complaint fails to charge the defendant with any fraud.

[Ed. Note.—For other cases, see Execution, Cent. Dig. §§ 1214–1221; Dec. Dig. § 423.*]

In Error to the District Court of the United States for the Fourth Division of the Territory of Alaska.

Action by Frank J. Porter against Alex. Mitchell. From an order denying defendant's motion to strike from the judgment a provision directing his arrest, he brings error. Reversed.

The plaintiff in error was defendant in the court below to an action there brought by the defendant in error as plaintiff to recover the sum of $2,461.50, with costs, alleged by the complaint to be then due the plaintiff from the defendant for hauling 547 cords of wood from Alder and Cripple creeks to Ready Bullion creek, in Alaska, which wood the complaint alleged to be the property of the defendant, and which amount it alleged was the price the defendant agreed to pay the plaintiff for that service. The complaint was verified by the plaintiff on the 16th day of June, 1910, and filed in the court the next day, on which last-mentioned day, to wit, June 17, 1910, the plaintiff made and also filed an affidavit in the following words and figures: "That he, as plaintiff, has commenced an action in the above-entitled court, the object and purpose of which is to recover a judgment against the defendant, Alex. Mitchell, for the sum of two thousand four hundred and sixty-one dollars and fifty cents ($2,461.50) on a claim for services rendered by plaintiff for and on behalf of defendant between the 22d of January, 1910, and the 1st

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes
194 F.—4

day of April, 1910, whereby said defendant became indebted to the said plaintiff in the sum of $2,461.50, which amount defendant agreed to pay. That the defendant, Alex. Mitchell, is about to remove from the district of Alaska to some point or points unknown to plaintiff, without said territory of Alaska, with intent to defraud his creditors, especially this affiant, and that said defendant has disposed of all of his property in the district of Alaska, and converted the same into money, with intent to defraud his creditors, especially this affiant."

Based upon these proceedings, a writ, signed by the judge and under the seal of the court, was issued directing the marshal to arrest the defendant wherever found in the district, and to hold him to bail in the sum of $2,500, under which writ the defendant was arrested. He subsequently gave bail. Thereafter he moved the court to discharge him and exonerate his bondsmen, basing that motion upon his own affidavit and upon the deposition of one Peter Vachon.

The affidavit of the defendant, Mitchell, is as follows:

"I am the defendant above named. In January, 1910, I was the owner of a certain lot of firewood, 4-foot length, situate on Alder and Cripple creeks, and at that time I had over six hundred (600) cords of wood. I entered into an agreement with Sandstrom, Olson, Gillis & Gaidos, copartners engaged in mining on number three (3) Ready Bullion creek, Fairbanks recording district, territory of Alaska, to sell to them said wood at two and 50/100 dollars ($2.50) per cord, subject to the following conditions: That said wood was to be paid for early in May, 1910, but the title thereto should remain in me until it was paid for. Thereafter the parties to whom I agreed to sell said wood caused same to be transported by one F. J. Porter to the ground where they were carrying on mining operations; and in order to avoid any question about my title to the wood, when Sandstrom et al. failed in their mining operations, they gave me a bill of sale, and I took possession of same and sold it for the sum of eighteen hundred dollars ($1,800.00), which included the original purchase price as agreed by Sandstrom et al., and the expense I had been to in looking after said wood and obtaining a purchaser. Thereafter, I started down river on my way to my home in Greece, and was arrested and brought back to Fairbanks on the claim of F. J. Porter, who claimed I was indebted to him in the sum of twenty-four hundred sixty-one and 50/100 dollars ($2,461.50). I am not indebted to said Porter in any sum whatsoever. I never contracted with him to haul the wood, I had nothing to do with the hauling of the wood, never agreed in writing or otherwise to pay him any sum due and owing to Sandstrom et al., and am not liable for the amount of his claim, or any part or portion thereof. I am informed and believe, and so allege, that on January 22, 1910, Sandstrom, Olson, Gillis & Gaidos entered into a certain written agreement with F. J. Porter for the hauling of the wood I had sold to them, at the rate of four and 50/100 dollars ($4.50) per cord, which said agreement was in words and figures as follows, to wit:

"'This agreement, made in duplicate this 22d day of January, A. D. 1910, between Sandstrom, Olson, Gillis & Gaidos, copartners, miners, operating 3 Ready Bullion creek, in the Fairbanks recording district, territory of Alaska, parties of the first part, and Frank J. Porter, of Fairbanks, Alaska, party of the second part, witnesseth: That the parties of the first part are to supply the said Porter with 1,000 cords of four-foot wood for transportation from Alder and Cripple creeks to the claim being operated by the parties of the first part on Ready Bullion creek. And the parties of the first part agree to pay the party of the second part for the said hauling the price of four and one-half dollars ($4.50) per cord of 128 cu. feet. Party of the second part agrees to pile the wood 8 ft. high so that the same can be accurately measured. The parties of the first part agree to supply the wood so to be hauled, up to the said amount of 1,000 cords, in such quantities as the party of the second part may desire, and the party of the second part agrees to commence the hauling of same on or before February 1st, 1910, and to continue until the same is all hauled, agreeing to have the entire quantity all delivered on Ready Bullion creek before the trails break up and the snow goes off. The parties of the first part are to pay the party of the second part, or his order, as follows: as much as possible at each clean-up after commencing sluicing and the full

amount due second party for said hauling to be paid on or before 1st July, 1910.

" 'In witness whereof the parties hereto have hereunto set their hands and seals this 22d day of January, A. D. 1910.

" [Signed]   Geo. Gaidos.<br>
" 'D. Gillis.<br>
" 'G. Sandstrom.<br>
" 'F. J. Porter.

" 'Signed, sealed, and delivered in the presence of:

" 'Edw. Sandstrom.

" 'Edw. J. Higney.

" 'Sandstrom, Gillis, Gaidos & Co., Ready Bullion Creek.

" 'Please pay to the order of Vachon & Sterling, Fairbanks, all sums of money due me under above contract, as the same become due, and charge to my account. [Signed]   F. J. Porter.

" 'Accepted, payable to Vachon & Sterling. Gaidos, Gillis Co.'

"Said F. J. Porter was an employé of Sandstrom et al., and not of myself, and long prior to the time the above-entitled action was instituted said Porter assigned all his claim in and to the above-entitled account to Vachon & Sterling, who were the owners of said account upon the date said suit was instituted, and said Porter had no interest whatsoever in said account, or any part thereof, and is not the real party in interest, and has no claim whatsoever against me. I never in writing or otherwise agreed to pay to Porter, or to Vachon & Sterling, for the hauling of said wood, and never obligated myself to pay said indebtedness so contracted by Sandstrom et al., founded upon said written agreement above set forth, and am not now liable for said debt and am not now indebted to the plaintiff above named, or his assigns, in any sum whatsoever. My arrest was wrongful, and I have been greatly damaged thereby, have been detained in Fairbanks against my will, and expect to return to my home in Greece. I am sixty-three (63) years of age, and do not desire to go out over the trail, but am desirous of going outside by steamboat. I had my ticket purchased clear through to Seattle, and was on my way to Seattle when arrested and brought back, on or about June 22, 1910, and have been detained here under great expense ever since said time. I am at present out on bail and am unable to leave Alaska unless the writ of arrest is discharged. Alex. Mitchell.

"Subscribed and sworn to before me this August 23, 1910.

"John A. Clark. [Seal.]

"Notary Public in and for the Territory of Alaska."

. An order denying the motion was entered September 2, 1910, in these words: "Now on this day this cause came on for hearing upon the motion of the defendant for an order to discharge the writ of arrest, theretofore issued herein. McGinn & Sullivan appearing for plaintiff, McGowan & Clark for defendant, and, after argument had and the court being fully advised in the premises, denies said motion."

On the 22d of the next month the plaintiff in the action filed by leave of the court an amended complaint, stating therein the cause of action to be, in substance, that on the 22d of February, 1910, the plaintiff entered into an agreement with Gaidos, Gillis, Sandstrom & Olson as mining partners under the firm name of Sandstrom, Gaidos, Gillis & Co., whereby the plaintiff agreed to haul for that partnership 1,000 cords of 4-foot wood from Alder and Cripple creeks in the Fairbanks recording district to the claim being operated by the copartners on Ready Bullion creek for the agreed sum of $4.50 per cord of 128 cubic feet; that, pursuant to said agreement, the plaintiff so hauled about 550 cords of the wood, when it was mutually agreed between the respective parties that, on account of financial difficulties of the firm, the plaintiff need not haul any more wood under the contract, and that the copartnership was then indebted to the plaintiff for hauling the 550 cords in the sum of $2,461.50; that thereafter the plaintiff told the defendant that, if Sandstrom, Gaidos, Gillis & Co. failed to pay him the $2,461.50, he would hold the wood which was then in his possession on Ready Bullion creek under a claim of lien, "or that he would attach all of said copartners' right, title, and interest in said wood and sell the same at public sale; that the defend-

ant then informed the plaintiff that he had a claim against said wood to the amount of one thousand three hundred and seventy-five dollars ($1,375), being the price that said copartnership had agreed to pay him for said wood at the rate of two dollars and fifty cents ($2.50) per cord;" that at that time there still remained upon the claim at Ready Bullion creek about 450 cords of the wood hauled by the plaintiff, "and that the said defendant declared to said plaintiff that it was of sufficient value to pay the defendant the two dollars and fifty cents ($2.50) for each and every cord upon said claim and the four dollars and fifty cents ($4.50) per cord due plaintiff from said copartnership for hauling the same, and that the defendant then and there undertook and agreed with the plaintiff that if he, said plaintiff, would not seek to dispose of the said wood and the said property by virtue of his lien, or bring legal proceedings to enforce his claim against the same and not involve the said wood in litigation, and release the said copartnership of their indebtedness to him, that he, the said defendant, would procure a bill of sale from said copartnership, and take the title of said wood in his own name and sell and dispose of the same, and that he would pay to the plaintiff for each and every cord then remaining upon said claim and which had been hauled by said plaintiff the sum of four dollars and fifty cents ($4.50) per cord, and the said defendant at said time further agreed that he would not sell any of said wood for less than eight dollars ($8) per cord, and said defendant further stated to said plaintiff that he, said defendant, had 170 cords of wood in the hills, and that said defendant would pay to said plaintiff any balance of the said sum of two thousand four hundred sixty-one dollars and fifty cents ($2,461.50) due said plaintiff after the sale of the said wood on Ready Bullion creek, and said defendant further agreed with said plaintiff that if at any time said defendant desired to get the money coming to him from the sale of said wood from said copartnership that he would give to said plaintiff the privilege of purchasing all of said wood before offering the same to any other person for sale by paying to him, the said defendant, the amount of his claim, to wit, the sum of one thousand three hundred seventy-five dollars ($1,375), and the said plaintiff agreed with said defendant, whenever said defendant should ask it, to pay to him, said defendant, the amount of his claim to wit, the sum of one thousand three hundred and seventy-five dollars ($1,375);" that, in pursuance of that agreement, the plaintiff released the copartnership from their obligations to him, and agreed with the defendant that he would not attempt to dispose of the said wood, and that he would not institute any legal proceedings in any court involving the wood in litigation, and that thereupon the said copartnership executed to the defendant a bill of sale conveying to him all their interest in the wood, and the defendant agreed to pay to plaintiff the amount coming to him from said copartnership for hauling the wood; that thereafter, and without the knowledge or consent of the plaintiff, the defendant sold and disposed of the wood, and by reason thereof became indebted to the plaintiff in the sum of $2,461.50, which the defendant has refused and neglected to pay. The prayer of the amended complaint is for that sum of money, with costs.

The case was tried with a jury, which returned this verdict: "We, the jury duly impaneled and sworn in the above-entitled case, find in favor of the plaintiff and against the defendant, and find that the defendant is indebted to the plaintiff in the sum of two thousand four hundred sixty-one and $50/100$ dollars ($2,461.50), and costs of court." Subsequent to the verdict, the defendant was surrendered by his bondsmen to the marshal and his bail exonerated.

The judgment entered in the case recites the substance of the verdict, and that "within the time required by law the said defendant by his attorneys duly filed his motion for a new trial, on the ground, among other things, that said verdict was excessive, and the court having taken said matter under advisement, and having duly considered the law and the evidence in regard to the ground set up in said motion for a new trial, and the court being of the opinion that the said verdict, in view of all the evidence, was excessive, and that a new trial should be granted unless the said plaintiff was willing to remit the amount of said verdict in excess of $1,800 and the court having so announced his decision upon the 9th day of January, 1911, and the plain-

tiff then and there accepting the same and remitting to said defendant the amount of said verdict in excess of $1,800, and it therefore appearing to the court that the said plaintiff was entitled to a judgment against the said defendant Alex. Mitchell in the sum of $1,800," and proceeded to adjudge that the plaintiff have and recover of the defendant $1,800 with costs, and that execution therefor issue, concluding with these further provisions: "It further appearing to the court that the defendant, Alex. Mitchell, has been previously arrested in said action under the provisions of chapter 12 of part 4 of the Code of Civil Procedure of the district of Alaska, it is further ordered that execution may be issued against the person of the judgment debtor after the return of execution against his property unsatisfied in whole or in part."

Based upon an affidavit to the effect that the only issue submitted to the jury or by it found upon related to the question of indebtedness of the defendant to the plaintiff, a motion was subsequently made by the defendant for his discharge from custody and that the two last above quoted paragraphs of the judgment be stricken therefrom, both of which motions were denied in this order: "That the said motion of the defendant to strike certain paragraphs from the judgment of the court heretofore entered herein be, and the same is hereby, denied, and the motion of the defendant for the discharge of said defendant from arrest be, and the same is hereby, denied, without prejudice to renewal, to which ruling and order of the court defendant excepts, and exception is allowed."

Charles J. Heggerty and McGowan & Clark, for plaintiff in error.

Metson, Drew & MacKenzie and E. H. Ryan, for defendant in error.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

ROSS, Circuit Judge (after stating the facts as above). The motion to dismiss the writ of error is denied.

It is based upon these grounds:

"First. That said order is not a final order or judgment within the contemplation of the Alaskan Code.

"Second. That admitting, pro argumenti, that the order denying the motion to discharge from custody was final and therefore appealable, defendant had made a prior application which had been denied, and had not appealed from the decision of the court, and the order was therefore res judicata."

[1, 2] The Code referred to permits a writ of error from this court to review a final order of a District Court of Alaska. Section 504, Carter's Ann. Code Civ. Proc. Alaska; Tornanses v. Melsing, 106 Fed. 775, 45 C. C. A. 615. The prior order refusing the discharge of the defendant from custody was made before the trial of the case, and consequently before judgment, and was therefore interlocutory. The cause of action counted on in the amended complaint on which the case was tried was a different cause from that stated in the original complaint upon which the prior arrest was based.

Passing the point made as to the propriety of permitting such a change of the cause of action, it is to be observed that the amended complaint was not only without any charge of fraud, but was not supplemented by any affidavit of any character. The order sought to be reviewed by the present writ of error was entered after the rendition of the judgment in the action, and was a denial of the defendant's motion made to strike from that judgment the provision reciting his

provisional arrest and refusing to discharge him from custody, and
also directing that execution issue against the person of the defend-
ant after return of execution against his property unsatisfied in whole
or in part. This was a final order. It, in effect, not only directed
that he be kept a prisoner, but that execution be issued upon the judg-
ment to enforce his imprisonment.

[3] Upon the merits, to state the case is to decide it. Even if it
be conceded that the preliminary arrest of the defendant was author-
ized, which we are far from doing in view of the affidavit upon which
it was based, the cause of action was totally changed by the amended
complaint upon which the trial was had, in which amended complaint
there is not a word even tending to charge the defendant with any
fraud in connection with his alleged neglect and refusal to pay the
amount therein alleged to be due from him to the plaintiff; and, as
has been shown, was not supplemented by any affidavit of any char-
acter. "To authorize a judgment convicting the defendant of fraud,"
said the Supreme Court of California in Davis v. Robinson, 10 Cal.
411, "the facts upon which the charge is based must be specifically
alleged in the complaint. A judgment is the determination of the
rights of the parties upon the facts pleaded, and it cannot in any event
exceed the relief warranted by the case stated in the complaint. Ex-
ecution against the person, unlike an execution against the property
of the defendant, which follows, as a matter of course, upon a money
judgment, can only issue upon direction of the court to that effect,
based upon the special facts found, and such facts cannot be consid-
ered by the jury unless averred in the pleadings. Side issues
upon affidavits are not the issues upon which juries pass. The
arrest upon affidavit is only intended to secure the presence
of the defendant until final judgment; and, in order to detain
and imprison his person afterwards, the fraud must be alleged
in the complaint, be passed upon by the jury, and be stated in the
judgment. In nearly every case in which an arrest is allowed by the
statute the facts authorizing the arrest also constitute the cause of
the action, and, of course, must necessarily be stated in the complaint.
In the few instances where the circumstances authorizing an arrest
occur subsequently to the filing of the complaint, application should
be made to the court either to amend the original, or to file a supple-
mental complaint, so as to set forth the facts upon which execution
against the person of the defendant will be asked in the enforcement
of the judgment sought. By requiring the charges to be stated in the
complaint, the rights of the defendant will be fully guarded. He can
then meet the charges, and have a fair opportunity of defending him-
self by a trial before the jury. There may be some inconvenience in
blending, on the same trial, a question of indebtedness and a ques-
tion of fraud, but we perceive no way of avoiding this and giving
full protection to the defendant. A special finding on the question
of fraud should be always taken, so as to keep it as distinct as pos-
sible from the main subject of controversy." Substantially the same
views were taken by the same court in the subsequent case of Payne
v. Elliot, 54 Cal. 339, 342, 35 Am. Rep. 80, where it was said:

"But the judgment for fraud exceeds the relief to which the plaintiff was entitled by his complaint, for the only averments upon the subject of fraud are 'that the defendants received said shares of stock in a fiduciary capacity, as the agents of this plaintiff and not otherwise,' and 'that defendants were and are guilty of fraud in receiving and converting said stock to their own use.' It is not altogether clear how a person is chargeable with fraud by receiving shares of stock in a fiduciary capacity; for, as the term 'fiduciary' imports, the defendants must have received them rightfully to hold in trust for the plaintiff. But if the defendants, as trustees of the plaintiff, fraudulently converted the stock to their own use, the facts which constituted the imputed fraud should have been stated; for fraud is never presumed, but must be proved, and, to be proved, the facts upon which the charge is based must be specifically alleged in the complaint. Davis v. Robinson, 10 Cal. 412.

"Without any issuable averments upon the subject the court finds 'that the defendants were the agents of the plaintiff, that the plaintiff delivered the stock to them to hold as security for the payment of $400 which he owed to them, and that they received it in the course of their employment as such agents and in a fiduciary capacity.' Upon these findings the court 'adjudged the defendants guilty of having fraudulently misapplied and converted said one hundred shares of the capital stock of the Northern Belle Mill & Mining Company to their own use, and that the defendants be arrested and held in custody until they pay the amount of this judgment, or until they shall otherwise be legally discharged from custody.' The judgment in this respect is not warranted by the case stated in the complaint or the findings.

"Some time after the judgment had been rendered, the court below undertook, by an order entered upon the minutes of the court, to modify it by 'striking out the last six lines therein'; but that does not cure the error. The judgment convicting the defendants of fraud and ordering their arrest should be vacated.

"It is hardly necessary to remand the cause for a new trial for that purpose, but the court below is directed to strike from the judgment the following matter, viz.: 'And that plaintiff is entitled to an order of arrest against said defendants until the same shall be paid. * * * And it is further ordered, adjudged, and decreed that defendants were the agents of the said plaintiff, and that they received 100 shares of the capital stock of the Northern Belle Mill & Mining Company, of the value of $2,950; that they received the same as the agents of the said plaintiff, and in a fiduciary capacity, and refused to deliver the same to plaintiff on demand; and that they, the said defendants, converted the same to their own use, and against the will or consent of said plaintiff, by reason of which they are hereby adjudged guilty of fraud. And it is further ordered, adjudged, and decreed that said defendants be arrested, and held in custody until they pay the amount of this judgment, or until they otherwise legally be discharged from custody.'"

We are of the opinion that the views thus expressed in the cases cited are sound, and we therefore reverse the order in question, with direction to the court below to strike from the judgment the clauses hereinabove quoted, and to discharge the defendant from custody.

Ordered accordingly.